Patterson, Appellant, *v.* Philadelphia Dairy Products Company.

196

Argued October 8, 1954. Before RHODES, P. J., HIRT, ROSS, WRIGHT, WOODSIDE and ERVIN, JJ. (GUNTHER, J., absent).

*David L. Ullman,* for appellant.

*Louis Wagner,* for appellees.

OPINION BY ERVIN, J., January 14, 1955:

This is a workmen's compensation case wherein the claimant seeks compensation for disability which he alleges is the result of an accident sustained in the course of his employment. The compensation authorities found in favor of claimant and made an award. The employer and its insurance carrier appealed to the Court of Common Pleas No. 5 of Philadelphia County which court sustained exceptions to the decision of the Workmen's Compensation Board, set aside the findings of the Board and dismissed the claim. This appeal by the claimant followed.

Claimant was employed by the Philadelphia Dairy Products Co. as a truck driver. Part of his duties were to help load and unload the truck. In the afternoon of December 24, 1948 claimant and a helper were engaged in unloading pasteboard cartons of milk bottles. Claimant was on top of a pile of cartons and his helper was in the truck sliding the cartons down a conveyor to the claimant who picked them up from the conveyor and placed them on the pile. As claimant reached down to pick up a carton of bottles his legs went from under him and he fell to his knees. On several occasions prior to December 24, 1948 claimant had been disabled by accidents resulting in injuries to his back. On this occasion claimant advised the plant manager that he had hurt his back and requested and received permission to go to the Osteopathic Hospital for treatment. After returning to the plant he did not engage in any loading or unloading work. Claimant worked the following day but only drove the truck while his son helped him by doing all the loading and unloading work. From Christmas Day until he went to the hospital, claimant was confined to his bed. After an examination on December 31, 1948 by Dr. James M. Eaton, a diplomate in orthopedic surgery, claimant was admitted to the Osteopathic Hospital of Philadelphia on January 1, 1949 where he had x-ray studies and an air myelogram which showed a protruding disc at the level of the fourth lumbar vertebra on the right side. Surgery was recommended for the relief of this source of nerve root irritation. On January 7, 1949, surgery was performed, at which time the disc at the level of the fourth lumbar vertebra was removed. A disc at the level of the fifth lumbar vertebra was found to be degenerate but not protruding; so both discs were removed; and the nucleus pulposus was evacuated. Following the operation for the re-

moval of the discs a fusion of the two lower lumbar vertebrae to the sacrum was performed. Claimant made an uneventful recovery and was discharged from the hospital on January 21, 1949. He returned to work for the employer on April 14, 1949 as a guard, a job which did not require him to do any bending or lifting and he is presently so employed.

The Board was of the opinion that claimant sustained an accident which aggravated a pre-existing condition. The material findings of fact made by the Board are as follows: *"Second*: The Workmen's Compensation Board finds as a fact that on December 24, 1949 [1948], while unloading cartons of bottles, claimant fell on both knees, when his left leg became straddled. *Ninth*: The Workmen's Compensation Board finds as a fact that claimant had a pre-existing back ailment which had disabled him at times, the last occasion being from August 27, 1948 to September 10, 1948. *Tenth*: The Workmen's Compensation Board finds as a fact that claimant's fall on December 24, 1948, aggravated his pre-existing condition, causing a rupture of discs L4 and L5, rendering him totally disabled."

The court below reversed the award on the ground that the finding of the Board that claimant's pre-existing back ailment was aggravated by the fall of December 24, 1948 was without foundation and completely unsupported by the evidence.

The question involved in this appeal is whether the findings of fact of the compensation authorities are supported by competent and substantial evidence.

In order to sustain an award, the record must disclose competent and substantial evidence, either direct or circumstantial, of the happening to an employe of something undesigned, unexpected or fortuitous, outside of the ordinary course of events, and also of a

disabling injury resulting therefrom. *Royko v. Logan Coal Co.*, 146 Pa. Superior Ct. 449, 22 A. 2d 434. See *Manikowski v. Morris Run Coal Min. Co.*, 163 Pa. Superior Ct. 118, 60 A. 2d 344. In cases in which a pre-existing ailment is a factor, the claimant has the burden of showing by competent medical evidence, and beyond mere conjecture, that the disability resulted from the alleged accident and not from the normal progress of the pre-existing physical defect. *Mullin, Admrx. v. Ebert et al.*, 156 Pa. Superior Ct. 421, 40 A. 2d 872; *Royko v. Logan Coal Co.*, supra. However, if there is substantial and competent evidence of an accident, the mere fact that the employe was afflicted with a pre-existing physical defect or ailment which rendered him more susceptible to injury than an entirely normal person will not prevent an award. *Lackner v. Pierre, Inc.*, 120 Pa. Superior Ct. 50, 181 A. 845; *Updegraff v. Pa. Game Commission*, 163 Pa. Superior Ct. 112, 60 A. 2d 605; see *Gausman v. Pearson Co.*, 284 Pa. 348, 131 A. 247. On the other hand, disability resulting from an existing disease or abnormal condition suffered by an employe while performing his usual work without any accident in the ordinary lay understanding of that term is not compensable. *Rosso v. Aetna Steel Prod. Corp.*, 174 Pa. Superior Ct. 258, 101 A. 2d 392; *White v. Kelly, Inc.*, 174 Pa. Superior Ct. 262, 101 A. 2d 395. In neither the *Rosso* nor *White* case was there any evidence of a fall or other accident.

Appellee contends that there is no competent evidence of an independent, external accident and argues that claimant aggravated his pre-existing back condition as the result of attempting to lift the cartons in the performance of his usual work in the usual manner. This contention is without merit.

In the instant case the claimant described the alleged accident as follows: "A. Yes, I was taking them

[cartons] off and piling them up on top as he was sliding them down a conveyor to me. When I reached down for one I was straddled and as I reached down for one my legs went from under me and I went down on both knees and I couldn't hardly get back up again for a few minutes. Q. Your leg went from under you? Which leg? A. My left leg, the way I was straddled. Q. The left leg was behind you and the right a little in front of you? A. My right leg was toward the front. The conveyor was coming down and I was facing that way and pushing the bottles on the pile in back of me. Q. How did it feel? Did you have pain at that time? A. I had the pain when I went down and I couldn't get back up. Q. Where did you have pain? A. Across the lower part of my back. Q. What kind of a pain was it—a little, a lot, or what? A. It was sharp. Q. How did you get up? A. I reached myself up on a stack of bottles and pushed myself up that way to get on my feet. Q. You mean you pushed yourself up with your hands and arms? A. Yes."

Dr. Eaton, the sole medical witness, testified as follows concerning the history obtained from claimant at the time he first saw him on December 31, 1948: "A. His chief complaint at the time of examination was acute, spasmodic low back pain. The patient stated that he had had trouble in his lower back since 1941 with recurrent attacks of acute, spasmodic pain on strain. The present attack for which I was consulted started on December 24, 1948, on attempting to lift a heavy can, at which time he had suffered a severe pain. It caused him to fall to his knees and his pain was so severe that he was unable to move about without a great deal of effort."

The uncontradicted testimony of Dr. Eaton, the sole medical witness, also clearly established that the fall was a material factor in aggravating the pre-existing

back condition. Dr. Eaton was asked a hypothetical question embodying the material facts in the record including the record of claimant's pre-existing back condition, an accurate description of the occurrence of the alleged accident on December 24, 1948, and the condition of the claimant in the period immediately following the alleged accident. At the conclusion of this question Dr. Eaton was asked: "If those facts are true, sir, do you have an opinion as to whether the limping and falling to his knees on the 24th of December was a material factor in aggravating a pre-existing back condition? A. Yes. It is my opinion that it is." Under cross-examination Dr. Eaton was asked: "Q. So the most that you would claim in this particular case is that the effort, whatever it was he was making, was an aggravating rather than a causative factor? A. For this particular attack it was the causative factor. Q. I understand that, but I am talking about the herniation of the disks. A. That is what I am talking about, too."

We are unable to agree with the conclusion of the court below that "The evidence introduced to prove that the fall caused the injury is, in light of the medical history, completely unrealistic. One just doesn't fall to one's knees; there must be a cause. None was here shown. The only logical inference is that the pain preceded the fall." The unequivocal medical testimony clearly established that the fall was a causative factor in the claimant's disability. Moreover, whether the pain in the lower back suffered by claimant preceded and caused the fall or occurred as the result of the fall is immaterial. Pertinent and applicable here is the statement in *McCarthy v. General Electric Co.,* 293 Pa. 448, 451, 452, 143 A. 116: "Furthermore, it is not necessary that the fall result from an accident, as the fall is the accident; nor is it ma-

terial that the employee fell because he became dizzy or unconscious. An injury sustained by an accidental fall is compensable although the fall resulted from some disease with which the employe was afflicted." Furthermore, it was not incumbent upon claimant to show the exact nature of the accident or just how it occurred. *Hunter v. American Oil Co.,* 136 Pa. Superior Ct. 563, 7 A. 2d 479. An accident sustained in the course of employment from an unexplained cause is compensable. *Zelazny v. Seneca Coal Mining Co.,* 275 Pa. 397, 119 A. 487; *Hopwood v. Pittsburgh,* 152 Pa. Superior Ct. 398, 33 A. 2d 658.

The testimony of both the claimant and Dr. Eaton clearly establishes that claimant fell in the course of his employment. The uncontradicted testimony of the only medical witness also establishes that the fall sustained by claimant was a causative factor in his disability. Where there is competent medical evidence that a pre-existing physical condition has been aggravated by an accident to a workman, compensation is properly allowable. *Dewees v. Day,* 291 Pa. 379, 140 A. 345. Moreover, it is well established that since the compensation authorities found in his favor, the evidence must be viewed in the light most favorable to the claimant and he must be given the benefit of every inference reasonably deducible therefrom. *Hocken·berry v. State Workmen's Insurance Fund,* 133 Pa. Superior Ct. 249, 2 A. 2d 536; *Darmopray v. Budd Mfg. Co.,* 169 Pa. Superior Ct. 200, 82 A. 2d 341; *Halloway v. Carnegie-Illinois Steel Corporation,* 173 Pa. Superior Ct. 137, 96 A. 2d 171. With that principle in mind, we are of the opinion that the findings of the compensation authorities are supported by substantial competent evidence and that the award was properly made.

The judgment of the court below is reversed, and the record is remitted with direction to reinstate the award and enter judgment thereon in favor of claimant.